UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Betco Corporation, Ltd.                                     Case No. 3:12-cv-1045

        Plaintiff

    v.                                                                    MEMORANDUM OPINION
                                                                                                                                                                                                                               & ORDER

Malcolm D. Peacock, et al.

        Defendants


## BACKGROUND

      Betco Corporation, Ltd. is an Ohio limited-liability entity located in Toledo, Ohio. (Compl. at ¶ 1). In May 2010, Betco was contacted by Steven Royko, a business broker, to see if Betco was interested in purchasing two entities, Bio-Systems Corporation ("BSC") and Enviro-Zyme International, LLC. ("EZI"). (*Id.* at ¶ 8-10). At that time, BSC and EZI were owned by Malcolm and Marilyn Peacock. (*Id.* at ¶ 11). The Peacocks are residents of Illinois. (*Id.* at ¶ 3).

      Royko sent an email to Betco containing an overview of the entities, along with a Confidentiality Agreement which needed to be signed before more information was released. (*Id.* at ¶ 14). Betco signed the confidentiality agreement and was given information on the entities including a "Confidential Business Review." (*Id.* at ¶ 15). The information contained in this "Confidential Business Review" was supplied by the Peacocks. (*Id* at ¶ 16).

      Contained in the "Confidential Business Review," according to Betco, were express representations as to operations and profitability, among others. (*Id.* at ¶ 17). Per the

Confidentiality Agreement, Betco was restricted in its ability to investigate representations made by the entities being offered for sale. (*Id.* at ¶ 20). Betco also alleges that Malcolm Peacock restricted its access to information by directing employees of the entities not to communicate with Betco employees. (*Id.* at ¶ 21).

In September 2010, Betco entered into a contract to purchase certain assets of BSC and EZI, including production equipment and other assets located in commercial buildings at the Beloit, Wisconsin plant. (*Id.* at ¶ 22). An Asset Purchase Agreement was entered into by Betco, BSC, EZI, and the Peacocks to complete the purchase of those assets. (*Id.* at ¶ 24).

Contemporaneously, Malcolm Peacock was hired by a Betco affiliate to operate the Beloit plant. (*Id.* at ¶ 27). Mr. Peacock operated the Beloit plan until November 2011. (*Id.*) Marilyn Peacock was hired to work at the Beloit plant as well and did so for a period of time following Betco's purchase of assets. (*Id.* at ¶ 28). Betco contends that following the purchase of assets, Malcolm Peacock directed employees of BSC and EZI not to communicate with Betco employees. (*Id.* at ¶ 31). Additionally, while working at the Beloit plan, Mr. Peacock failed to inform Betco's employees of the plant's numerous faults and its operations. (*Id.* at ¶ 29). Betco alleges that Mr. Peacock's efforts at concealment delayed Betco's discovery of numerous faults at the Beloit plant and were intended to mislead the Plaintiff. (*Id.* at ¶¶ 32-35).

Based upon the alleged misrepresentations, Betco filed this action against Malcom and Marilyn Peacock, B. Holdings, Inc., f/k/a BSC, and E. Holdings, f/k/a EZI. Betco initially asserted claims sounding in fraud and breach of contract. (Doc. No. 1).

Less than a month later, the Peacocks, Richard Peacock, Bio-Systems Corp., Ltd, and Beloit Plastics, LLC filed suit in the Western District of Wisconsin against Bio-Systems of Ohio alleging claims related to a distributor agreement, employment agreements, and lease agreements, among

others. *Bio-Systems Corp. v. Ltd, et al. v Bio-Systems of Ohio, LLC*, Case No. 12-cv-867 (W.D. Wisc.) (Doc. No. 30, Exh. E).

I conducted a Case Management Conference on August 20, 2012, with counsel for both sides participating. At that time a briefing schedule for discovery, dispositive motions, and a trial date were all set. (Doc. No. 18). Less than a month later, Betco filed its first amended complaint adding a claim of negligent misrepresentation to its original claims of fraud and breach of contract. (Doc. No. 24).

On January 29, 2013, Betco filed a second amended complaint adding claims of rescission, negligent misrepresentation and breach of duty of good faith and fair dealing. (Doc. No. 34).

In the Wisconsin litigation, defendant Bio-Systems of Ohio, LLC, moved for a stay of that litigation pending disposition of the case before me. On February 26, 2013, the Hon. William M. Conley granted the motion to stay. (Doc. No. 39-8, Exh. D).

In March 2013, Defendants moved for a change or transfer of venue to the Western District of Wisconsin. (Doc. No. 39). At a status conference on March 22, 2013, counsel for the parties advised the Court regarding their efforts at completing discovery. Based upon those discussions and a need for an extension of deadlines, I vacated those deadlines, implemented new deadlines and set the case for trial in April 2014. (Doc. No. 40).

After the briefing was completed on the motion to change or transfer venue, I ordered additional briefing on the issue of personal jurisdiction. (Doc. No. 45). That briefing was completed on July 17, 2013. On July 18, 2013, the parties moved for a joint extension of the discovery and dispositive motion deadline, which I granted. (Doc. Nos. 56-58).

3

On September 3, 2013, Defendants moved for sanctions on the use of information not disclosed in accordance with Rule 26. (Doc. No. 60). Plaintiff responded through a motion to strike and requested a pretrial conference. (Doc. No. 62). Defendants filed for summary judgment on September 18, 2013. (Doc. No. 63).

This matter is before me on Defendants' motion to dismiss for lack of personal jurisdiction (Doc. No. 46), Plaintiff's response (Doc. No. 48) and Defendants' reply (Doc. No. 53) thereto. Also before me is Defendants' motion to transfer venue (Doc. No. 39), Plaintiff's opposition (Doc. No. 41) and Defendants' reply (Doc. No. 43). For the reasons that follow, Defendants' motion regarding personal jurisdiction is denied and Defendants' motion for transfer is granted.

### MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

**Applicable Legal Standard**

In opposing a motion to dismiss for lack of personal jurisdiction, the burden is on the plaintiff to demonstrate that jurisdiction is proper. *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012), quoting *Bird v. Parsons,* 289 F.3d 865, 871 (6th Cir. 2001).

"Presented with a properly supported 12(b)(2) motion and opposition, the court has three procedural alternatives; it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." *Theunissen v. Matthews d/b/a/ Matthews Lumber Transfer*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citations omitted). The method of selection is left to the discretion of the district court. *Id.* The district court's choice determines the weight of plaintiff's burden. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998).

When confronted with a "properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth the specific facts showing that the court has jurisdiction." *Theunissen*, 935 F.2d at 1458, citing *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir. 1974).

> When. . . a district court rules on a jurisdictional motion to dismiss. . . without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff. . . To defeat such a motion, [the plaintiff] need only make a prima facie showing of jurisdiction.  Furthermore, a court . . . does not weigh the controverting assertions of the party seeking dismissal. . .

*Dean*, 134 F.3d at 1272, quoting *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). Dismissal is proper if all the facts taken together fail to establish a prima facie case for personal jurisdiction.  *Id.*

**Analysis**

1. Waiver of Jurisdiction

Betco contends the Defendants waived any complaints as to personal jurisdiction based upon their actions in this litigation.  The Defendants steadfastly maintain they have not waived, explicitly or implicitly, their affirmative defense challenging personal jurisdiction.

In the Sixth Circuit, "a challenge to personal jurisdiction must be raised in the first responsive pleading or be waived." *Taubman Co. v. Webfeats*, 319 F.3d 770, 773 (6th Cir. 2003).  In determining whether the personal jurisdiction defense has been abandoned, courts look to the conduct of the party raising the defense and whether, via that conduct, the plaintiff has a reasonable expectation that the defendant will defend the suit on the merits.  *See e.g., M & C Corp. v. Erwin Behr BmbH & Co. ., KG,*  508 Fed. Appx. 498, 505 (6th Cir. 2012), *citing Gerber v. Riordan*, 649 F.3d 514, 519

5

(6th Cir. 2011). A court making this assessment "considers all of the relevant circumstances." *King v. Taylor*, 594 F.3d 650, 659 (6th Cir. 2012), *cert. denied*, 133 S. Ct. 1473 (2013) (citation omitted).

Betco initiated this litigation on April 27, 2012. (Doc. No. 1). In May 2012, Defendants filed a complaint against Betco in the Western District of Wisconsin. On June 11, 2012, the Court granted a stipulated motion for an extension to answer. (Doc. Nos. 13-14). The Defendants' answer (Doc. No. 15) was filed on July 13, 2012 and contained an affirmative defense contesting personal jurisdiction. (*Id.* at p. 9, ¶ 7).

Betco then filed a first amended complaint and the Defendants' amended answer (Doc. No. 25) also contained an affirmative defense contesting personal jurisdiction. (*Id.* at p. 13, ¶ 14). After a second amended complaint by Betco, in January 2013, the Defendants again submitted an answer to the second amended complaint continuing to assert their affirmative defense as to personal jurisdiction. (Doc. No. 38, p. 16, ¶ 16).

Meanwhile, in the Wisconsin litigation, some discovery had been undertaken but on February 26, 2013, Judge Conley granted Betco's motion to stay the litigation pending the outcome of this action over the opposition of the Peacocks, the Defendants in this litigation.

On March 21, 2013, the Defendants here moved for a change or transfer of venue to the Western District of Wisconsin. After the briefing had been completed as to this motion, I entered an order requesting additional briefing on the issue of personal jurisdiction. (Doc. No. 45).

The parties did exchange initial disclosures, entered into a stipulated protective order, responded to discovery requests, retained experts, and participated in mediation efforts. However, "a defendant does not waive a jurisdictional defense by litigating preliminary matters without pressing the defense unless doing so gives the plaintiff a reasonable expectation that the defendant

6

intends to defend on the merits, or causes the court to expend some effort that would be wasted if personal jurisdiction is later found to be lacking." 2 MOORE'S FEDERAL PRACTICE, § 12.31[3] (3d ed. 2012).

In the litigation before me, the Defendants have been steadfast in asserting their objections to this Court's personal jurisdiction over them. In their motion to transfer venue, they articulated an intent to file a motion challenging personal jurisdiction if their motion to transfer venue was denied. Based upon the history of this litigation, both here and in Wisconsin, and considering all of the circumstances, I find the Defendants have not waived their personal jurisdiction defense.

2. Personal Jurisdiction

Both sides agree that general jurisdiction[1] is not present in this case but they disagree on the issue of specific jurisdiction. Specific jurisdiction is proper under circumstances "when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).

Personal jurisdiction exists over a nonresident "if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant [ ] due process." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (quotation omitted). The panel in *Bird* also noted:

> We have recognized that Ohio's long-arm statute is not conterminous with federal constitutional limits. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000) (noting that "the Ohio Supreme Court has ruled that the Ohio long-arm statute does not extend to the constitutional limits of the Due Process Clause") (citing *Goldstein v.*

---

[1] "General jurisdiction is proper only where 'a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state.'" *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002), *quoting Third Nat'l Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989).

7

>*Christianson*, 70 Ohio St.3d 232 (Ohio 1994) (per curiam)). Nevertheless, in evaluating whether personal jurisdiction is proper under Ohio's long-arm statute, we have consistently focused on whether there are sufficient minimum contacts between the nonresident defendant and the forum state so as to not offend "traditional notions of fair play and substantial justice." *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998) (addressing the due process concerns rather than inquiring into the propriety of jurisdiction under Ohio's long-arm statute).

*Id.* at 871-72.

Under Ohio's long-arm statute, Ohio Rev. Code § 2307.382(A)(1), Ohio courts grant personal jurisdiction over nonresidents transacting business in Ohio. Here, the Defendants do not dispute they were transacting business nor do they dispute that Ohio's long-arm statute applies to them.

Under the second step of the analysis and to comport with due process, I consider the factors endorsed by the Sixth Circuit in *Mohasco Industries, Inc.*, and which remain the standard in this Circuit:

>First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have had a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 450 (6th Cir. 2012), *quoting Southern Machine Co. v. Mohasco Industries*, 401 F.3d 374, 381 (6th Cir. 1968).

Turning to the first factor, that of purposeful availment, Betco argues the "Defendants specifically came to Ohio to sell their business enterprise to Ohio-based Betco." The Defendants are also alleged to have made misrepresentations in successfully selling the BSC and EZI assets to Betco as well as continuing to conceal and perpetrate the fraud after the sale.

8

The Plaintiff is correct in its assertion that "specific jurisdiction often may be premised on the single act of a defendant." *Nationwide Mut. Ins. v. Tryg Int'l Ins. Co., Ltd*, 91 F.3d 790, 974 (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 222 (1957)). Nevertheless, the Sixth Circuit also noted:

> The nature and quality of the act, as well as the circumstances surrounding its commission, must be examined to determine whether personal jurisdiction exists in each case. *International Shoe,* 326 U.S. at 318, 66 S.Ct. at 159. In all questions of personal jurisdiction, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum state." *Burger King*, 471 U.S. at 474, 105 S.Ct. at 2183 (quoting *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158).

*Id.*

In its second amended complaint, Betco alleges the Defendants' broker "cold-called" Betco in Ohio seeking to sell business assets. (Doc. No. 34 at ¶¶ 8-10). When Malcolm Peacock engaged a broker to market the entities, he "did not place any limits on the search to Ohio-based buyers or buyers from any particular geographic location." (Doc. No. 55 at ¶ 2). After Betco agreed to the confidentiality agreement, the individual Defendants supplied the broker with the information contained in the Confidential Business Review document, which contained numerous express representations and portrayed BSC and EZI as a good investment opportunity. (Doc. No. 34 at ¶¶ 15-18). The Defendants are alleged to have "made numerous false representations of material fact in the Confidential Business Review document." (*Id.* at ¶ 41). " [D]uring Betco's due-diligence process, defendants provided false and misleading information in response to Betco's inquiries." (*Id.* at ¶ 43).

Betco's Senior Vice-President and CFO, Tony Lyons, averred that the Confidential Business Review "was transmitted to Betco in Ohio by Defendants and/or their business-broker agent." (Doc. No. 48-9 at ¶ 8). Lyons also averred there were one or more phone conversations from Ohio and email communications from Ohio with Malcolm Peacock before and after the sale. (*Id.* at ¶ 9).

9

Additionally, as part of Betco's due-diligence process and by request to the Defendants and their business-broker, "documentation was transmitted by the same to Betco in Ohio." (*Id.* at ¶ 15). It is undisputed that Malcolm Peacock traveled to Ohio in September 2010 to meet with Betco representatives regarding the sale of BSC and EZI. (Doc. No. 39-3 at ¶ 5 and Doc. No. 48-9 at ¶ 16).

The parties entered into the asset purchase agreement at the end of September 2010 for the purchase of certain assets of BSC and EZI. (Doc. No. 34 at ¶ 22). This included "production equipment and related assets located in certain commercial buildings in Beloit, Wisconsin." (Doc. No. 30-1 at ¶ 5). Malcolm "Peacock was hired by Bio-Ohio[2] to operate the Beloit plant, and Mr. Peacock operated the Beloit plan until November 2011." (Doc. No. 34 at ¶ 27). In addition, Marilyn "Peacock was also hired to work at the Beloit plan until November 2011." (*Id.* at ¶ 28). In April 2011, Malcolm Peacock also travelled to Ohio as a Bio-Ohio employee to meet with Betco personnel. (Doc. No. 48-9 at ¶ 16).

The Supreme Court in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985), addressed the necessity of establishing "minimum contacts" between the nonresident defendant and the forum state, noting in pertinent parts:

> [T]he foreseeability that is critical to the due process analysis. . . is that the defendant's conduct and connection with the forum State is such that he should reasonably anticipate being haled into court there.

*Id* at 474, *quoting World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. at 286, 297 (1980). The Court then elaborated on a nonresident defendant's conduct in the context of purposeful availment as follows:

> Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a "substantial connection" with the forum

---

[2] After Betco purchased certain assets of BSC and EZI, they were later transferred to Betco's wholly-owned subsidiary, Bio-systems of Ohio, LLC. (Doc. No. 34 at ¶¶ 24-25).

10

> State. *McGee v. International Life Insurance Co., supra,* 355 U.S. at 223, 78 S.Ct. , at 201; see also *Kulko v. California Superior Court, supra,* 436 U.S. , at 94, n.7, 98 S.Ct. at 1698, n.7. Thus where the defendant "deliberately" has engaged in significant activities within a State, *Keeton v. Hustler Magazine, Inc., supra,* 465 U.S., at 781, 104 S.Ct. at 1481, or has created "continuing obligations" between himself and residents of the forum, *Travelers Health Assn v. Virginia,* 339 U.S. at 648, 70 S.Ct., at 929, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Id.* at 475-76. (Emphasis in original.)

Betco argues the existence of purposeful availment as was found in *Neogen Corp. v. Neo Gen Screening*, 282 F.3d 883 (6th Cir. 2002). *Neogen* involved a suit by a Michigan corporation against a Pennsylvania corporation which operated a website and was in the business of performing diagnostic testing of blood samples from infants. The Sixth Circuit found purposeful availment present as the defendant's website granted passwords to Michigan residents as part of its service and the interactive usage of the website was deemed to be intentionally reaching out to Michigan customers. In addition, the website displays of a chart showing the results of screenings included data from Michigan and touted the data as being collected from Michigan residents to complete the study. Finally, because the defendant, through its interactive website, sought to cultivate and intentionally do business with Michigan residents, this was viewed as maintaining relationships and obligations in the forum state.

Betco also relies on the case of *Schneider v. Hardesty*, 669 F.3d 693 (6th Cir. 2012), as an example of fraudulent communications which supported a finding of purposeful availment. The appellate court found the letters sent to Ohio investors contained false and misleading representations as well as promising to provide updates and encouraging them to contact the company's attorney with questions. The Circuit noted "these representations, indicative of an intent

11

to establish an ongoing contact, are exactly the kind of conduct recognized to constitute purposeful availment for due-process purposes." *Id.* at 702.

Simply by entering into a contract does not necessarily subject a non-resident defendant of purposefully availing itself of the "benefits and protections" of the forum state's law. *Kerry Steel, Inc. v. Paragon Indus. Inc.*, 106 F.3d 147, 151 (6th Cir. 1997). In situations, however, where there are allegations of fraud directed at the forum state and those misrepresentations are the basis for the litigation, a nonresident defendant's conduct in creating the connection with the forum state are examined closely in ascertaining minimum contacts.

The present situation is analogous to the circumstances presented in *Serras v. First Tennessee Bank Nat'l Assn.*, 875 F.2d 1212 (6th Cir. 1989). In *Serras*, a Michigan partnership purchased a Tennessee restaurant from a Tennessee bank (holder of a note on the restaurant) and looking for a buyer. The plaintiffs there alleged the bank made fraudulent representations as to the value of the property and upon those representations, they agreed to enter into a loan for the purchase of the restaurant. The Sixth Circuit found that on the affidavits and pleadings presented, purposeful availment was present as the "defendant actually travelled to [the forum state] to solicit their business, and actually made fraudulent misrepresentations while in [the forum state]." *Id.* 15 1217.

Similarly, in *Neal v. Janssen*, 270 F.3d 328 (6th Cir. 2001), the nonresident defendant was found to have directed false information to the plaintiffs in the forum state in a suit alleging fraud and breach of fiduciary duty in defrauding the plaintiffs regarding the commission for the sale of a dressage horse. Although the defendant never visited the forum state, the representations made to the forum state residents were pivotal:

> The plaintiffs contend that Janssen intentionally defrauded them in phone calls and faxes directed to plaintiffs or their agents in [the forum state] about the price he received from the sale of Aristocrat. When the actual content of the communications into the forum gives rise to the intentional tort action, that alone may constitute purposeful availment. It is the quality of the contacts, not the

> quantity, that determines whether they constitute "purposeful availment." *LAK, Inc. v. Deer Creek Enter.*, 885 F.2d 1293, 1301 (6th Cir. 1989). Furthermore, the actions of sending false information into [the forum state] by phone and fax had foreseeable effects in [the forum state] and were directed at individuals in [the forum state]. These false representations are the heart of the lawsuit, they were not merely incidental communications sent by the defendant into [the forum state].

*Id.* at 332.

In this instance, there was a series of alleged misrepresentations which culminated in a sale of assets to the Ohio resident. Through the allegations and affidavits presented, the misrepresentations were directed to the forum state by the Defendants. Considering all of the pleadings and affidavits offered in support and construing them in a light most favorable to the plaintiff, I find the Plaintiff has established purposeful availment in this instance.

Under the second prong of the *Mohasco* analysis, I consider whether the Plaintiff's cause of action arises from the Defendant's contacts with the state. The Sixth Circuit has deemed this factor to be a "lenient standard." *Schneider*, 669 F.3d at 703.

Here, the Defendant argues that a majority of the alleged actions giving rise to this case occurred or necessarily occurred in Wisconsin. As previously noted, the information contained in the Confidential Business Review was allegedly replete with misrepresentations and omissions. It was these representations which allegedly caused Betco to enter into multiple agreements with the Defendants. This is sufficient to meet the definition of the "arising under" factor, under the lenient standard of this Circuit as to the second prong of the *Mohasco* test.

The third prong under *Mohasco* requires the defendant have a sufficiently substantial connection to the forum such that the exercise of jurisdiction is not unreasonable. Where the first two criteria, under *Mohasco*, are met, an inference of reasonableness arises and only the unusual case will not meet the substantial connection criterion. *Id.* Factors to be considered include: (1) the burden on the defendant; (2) interest of the forum state; (3) the plaintiff's interest in obtaining relief;

13

and (4) other states' interest in securing the most efficient resolution of the policy. *Air Products and Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 554-55 (6th Cir. 2007).

Here, the contacts are sufficient to render jurisdiction over the Defendants reasonable. Adjudicating an alleged fraud perpetrated on an Ohio resident furthers the interest of the forum state. Plaintiff's interest in obtaining relief in Ohio is evident. Litigating this action in Ohio represents an inconvenience to the Defendants, especially to Mr. Peacock who has medical issues which may restrict his travel abilities. I do not agree that in light of the other factors favoring the Plaintiffs and for purposes of this personal jurisdiction analysis, inconvenience to the Defendants outweighs the interests of the Plaintiff and the forum. *See Ashi Metal Indus. Co. v. Superior Court of Calif.*, 480 U.S. 102, 114 (1987) (noting that where minimum contacts are demonstrated "often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the [non-resident] defendant.")

Based upon the foregoing, I find the Defendants' motion to dismiss on the basis of personal jurisdiction is denied.

As personal jurisdiction over the Defendants has been determined to exist, I now turn to consideration of the Defendants' motion to transfer venue. *See Pittock v. Otis Elevator Co.*, 8 F.3d 325, 329 (6th Cir. 1993) (warning that a transfer pursuant to Section 1404(a) may not be granted where there is no personal jurisdiction over the defendants).

## DEFENDANTS' MOTION TO TRANSFER VENUE

**Applicable Legal Standard**

Defendants ask to have this litigation transferred to the Western District of Wisconsin pursuant to 28 U.S.C. § 1404(a), which allows for a transfer upon "the convenience of the parties and witnesses, in the interest of justice. . . to any other district or division where it might have been brought. . .". *Id.*

The threshold inquiry for the district court is whether the transferee court is a district or division where the litigation may have been initiated.  Next, the court considers convenience of the parties as well as private and public-interest factors.  The district court "weigh[s] the relevant factors and decide[s] whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas*, 134 S.Ct. 568 (2013), *citing* § 1404(a).  The district courts are vested with broad discretion in "determin[ing] when party 'convenience' or 'the interest of justice' makes a transfer appropriate."  *Reese v. CNH America LLC*, 574 F.3d 315, 320 (6th Cir. 2009).

Factors to be considered in this assessment may include but are not limited to the following: (1)The plaintiff's choice of forum; (2) where the events at issue in the lawsuit took place; (3)convenience of the parties; (4) convenience of the witnesses;  (5) comparative availability of compulsory process to compel the attendance of unwilling witnesses; (6) the location of the physical evidence; (7) the enforceability of the judgment; (8) in which forum the case can be tried more inexpensively and expeditiously; (9) relative court congestion in the two forums; (10) public interest in local adjudication of local controversies; (11) whether transfer is in the "interest of justice"; (12) which forum better serves judicial economy; and (13) whether a contractual clause specifies a specific forum to resolve contractual disputes.  *See*  17 MOORE'S FEDERAL PRACTICE § 111.13[1][b] (3d ed. 2013).

As noted by the Supreme Court an individualized analysis "calls on the district court to weigh in the balance a number of case-specific factors." *Stewart Organization , Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).   The burden rests with the movant to establish why the case should be transferred for the convenience of the parties and in the interests of justice. *See Van Dusen v. Barrack*, 367 U.S. 612, 645-46 (1964) ("Section 1404(a) provides for transfer to a more convenient

forum, not to a forum likely to prove equally convenient or inconvenient.")  Finally, per the language of the statute, a district court has broad discretion in considering transfer under § 1404(a). *Roberts Metals, Inc. v. Florida Properties Marketing Group, Inc.*, 138 F.R.D. 89, 92 (N.D. Ohio 1991), *aff'd* 22 F.3d 1104 (Fed. Cir. 1994).

Having reviewed the parties' memoranda and submissions on the relevant factors to be weighed in this case, I now turn to the relevant factors for consideration in this analysis.

**Analysis**

    1.   Venue in the Transferee Court

Both sides are in agreement that this action could have been brought in the Western District of Wisconsin.  Therefore, the first step under a § 1404 analysis is satisfied.

    2.   Plaintiff's Choice of Forum

Generally, a plaintiff's choice of forum is accorded significant weight.  *United States v. Cinemark, USA, Inc.*, 66 F.Supp.2d 881, 887-88 (N.D. Ohio 1999).  The choice of forum is given less weight if the operative events occurred elsewhere or where the balance is strongly in favor of a defendant.  *Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 612 (6th Cir. 1984).  Here, Betco is an Ohio limited-liability company with its principal place of business in Toledo, Ohio.  This factor weighs against a transfer.

    3.   Convenience of Witnesses

The convenience of witnesses is generally considered the most important factor in a transfer analysis.  *Kay v. Nat'l City Mortg. Co.*, 494 F.Supp.2d 845, 852 (S.D. Ohio 2007).  *See also* 17 MOORE'S FEDERAL PRACTICE § 111.13[1][f] (3d ed. 2013).

Defendant has identified eight former and five current employees of the Beloit, Wisconsin facility acquired by Plaintiff, all of whom reside in Wisconsin.  (Doc. No. 39-3).  In addition, the Defendant named ten former Wisconsin-based customers who purchased products produced by the

Beloit plant. (*Id.*) The broker who approached Plaintiff regarding the sale, Steven Royco, also resides in Wisconsin. (*Id.*)

Betco argues that while its witnesses are not as numerous, they do include senior Betco managers as well as other Betco officers who would then be required to travel to Wisconsin. They also propose to present expert testimony by engineers in support of their case.

The residence of non-party witnesses as well as the testimony they will present weighs in consideration of this factor. The convenience of party witnesses is given less weight than non-party witnesses. Non-party witnesses, such as employees, are presumed to exemplify a willingness to testify given their relationship with the employer/party. In this instance, the Defendants have identified specific non-party witnesses which they claim can offer testimony on how Malcolm Peacock ran the Beloit plant, and could testify as to his role prior to and following the sale of assets. (Doc. No. 39-3).

Additionally, the availability of compulsory process to secure attendance of non-party witness favors the Defendant. Considering the witnesses identified by the Defendant, who reside in Wisconsin, and purport to offer testimony regarding Malcolm Peacock's running of the Beloit plant, this factor weighs in favor of transfer.

4. Location of Operative Events

In ascertaining where the operative events occurred it is important to consider the theories of liability and defenses asserted therein. Here, Betco "believes the defendants fraudulently induced Betco to purchase the enterprise, and the defendants thereafter engaged in a 'cover up' to keep the fraud concealed." (Doc. No. 41 at p. 6). In addition, Betco is pursuing claims sounding in rescission of the APA and restoration of its pre-contract position.

The alleged misrepresentations were received in Ohio, where Betco is located, and caused the Plaintiff to pursue the purchase of BSC and EZI. The due diligence undertaken by Betco

17

included requests for comprehensive information and documents, meetings between the company principals, and Plaintiff's operation personnel conducting site visits to the Beloit, Wisconsin plant.

Additionally, the post-acquisition fraud is centered on Malcolm Peacock's conduct in suppressing information while overseeing the operations at the Beloit plant in Wisconsin.

In considering the claims, it would appear that the operative facts occurred both in Ohio and in Wisconsin with the balance tipping in favor of the Ohio forum.

5.   Other Factors

While there is no forum selection clause, the contract at issue contains a provision requiring the law of Wisconsin to govern questions regarding construction, validity, and interpretation, etc. (Doc. No. 39-5 p. 34).  Betco correctly points out that the State of Ohio has an interest in providing redress for its residents who allege fraud perpetrated against them in their state of residence.

There is also a related suit in the Western District of Wisconsin before the Hon. William M. Conley, which is currently stayed pending the resolution of the litigation in this district.  This is not an insignificant factor.  Judicial economy must be a consideration in light of related cases pending in two different districts.  Although the issues raised in the Western District of Wisconsin are not identical, I take judicial notice of Judge Conley's observations in his opinion granting a stay of the Wisconsin litigation as they provide useful guidance in the current analysis:

> Plaintiffs contend that the issues bound up in the Ohio rescission action have little or no bearing on this action.  On the contrary, there appears considerable overlap between the two cases.  Defendant's rescission case will focus in significant part on the circumstances surrounding contract formation in late September of 2010, as well as the Peacocks' subsequent behavior as plant supervisors.  All of the factual background seems to be directly relevant to the formation and alleged breach of the three ancillary contracts that make up plaintiff's claims here.  Indeed, not only do the claims all arise out of the same transaction, the contracts upon which they are based were attached to the asset purchase agreement the defendant seeks to have rescinded.  Accordingly, it is likely that final disposition of the Ohio case would effectively dispose of several claims, if not the entirety of this action.  Far better to know the outcome of this more sweeping lawsuit, rather than expend time and energy in satellite litigation that may be preempted or rendered wholly inconsistent with that suit.

(Doc. No. 39-9, pp. 4-5).

The Defendants also note the physical health status of Defendant Malcolm Peacock may pose significant inconvenience should the matter proceed to trial in Ohio. In his affidavit, Mr. Peacock avers that he was diagnosed in 2008 with a brain tumor for which he had surgery, but in January 2013, the tumor was discovered to be growing again. (Doc. No. 39-3, p.4). He also expressed the likelihood of having to undergo another surgery sometime in 2013 along with the possibility of radiation treatments which might impact his ability to travel. (*Id.*)

Based upon the foregoing factors, I find the convenience of the parties, witnesses and the interests of judicial economy strongly favor transfer of this litigation to the Western District of Wisconsin. Judicial economy will be best served by having these related actions in the same district. In granting the motion to transfer, I express no opinion whether this case should be consolidated with Western District of Wisconsin Case No. 12-cv-367.

## CONCLUSION

Accordingly, Defendants' motion to dismiss for lack of personal jurisdiction (Doc. No. 46) is denied. The Defendants' motion for a transfer of venue pursuant to 28 U.S.C. § 1404(a) (Doc. No. 39) is granted. The Clerk is directed to transfer this case to the United States District Court for the Western Division of Wisconsin.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge